Good morning, Your Honors. May it please the Court, my name is Deirdre Glynn Levin, and I am representing Berenger Corporation today in this appeal. Mr. Stefanchik is pro se in this matter. He is here in the courtroom today, but we have agreed that I'll use the entire 15 minutes on behalf of both appellants, and I would like to reserve five minutes for rebuttal. Very well. I'd like to begin quickly by reviewing the salient facts and the procedural stature of the case, and also I'd like to focus on two of the issues raised in this important proceeding. The first issue that I will be focusing on is the issue of liability, and that is that this Court should or must review on a de novo basis whether the defendant's two expert reports indeed raised a genuine issue of material fact, such that the commission's motion for summary judgment should have been denied under Rule 56. The second issue I will focus on is the issue of damages, and that is an abuse of discretion standard of review. The district court entered an award of more than $17 million, close to $18 million, against the remaining two of six defendants, without the benefit of hearing on damages. And it is our position that this judgment exceeded the authority of the court and indeed is an abuse of discretion under the appropriate statute. Can I just make and get a clarification here? Yes. My understanding is that ATLAS stipulated to, I think it was $20 million worth of damages, but there was an understanding that there would be no attempt to execute against it because it had no resources. Is that understanding correct? That is my understanding as well, based on my review of the record. But I should clarify to the Court that I was not the counsel of record at the trial. I have only been the counsel of record on the appeal. So I really can't speak to the intricacies of the strategies and so on. But yes, that is my understanding. But as far as the record is concerned, no money has been paid that would, even if you didn't have a joint and several liability concept here, no money has been paid that would reduce whatever the amount is that is ultimately determined, if any, that is due. That's correct, Your Honor. And thank you for that clarification. And as a nice segue into that, I was going to explain how the FTC filed its amended complaint in the Western District of Washington against six defendants. And indeed, four of them were dismissed. The remaining two defendants are the two appellants who are here today. Barringer Corporation was formed in 2002 to begin the process of marketing the concept of the enterprise in paper. I think that it probably deserves a little bit of an explanation. And if you don't mind, I'd like to present for the court's benefit. Counsel, you can use your time any way you want. Sure. But I think I can speak on behalf of the panel. I'll tell you, we're pretty well prepared on the facts. Absolutely. I think we understand what the allegations were as to what Mr. Sifancic did. If it'll save you any time, you don't need to elaborate. Thank you. I will move on to just getting to the review of the order at issue. And again, this was an order granting the commission's motion for summary judgment. The defendant's vote, partial motion for summary judgment, was denied at that same time. No hearing was taken, although one was requested by Barringer and Mr. Sifancic. I make that point because I do think that is particularly importantly important when it comes to the issue of damages. And actually, whether the parties really intended that on the summary judgment, there would be a finding, not just of liability, but on damages as well. Are you contending, counsel, that you cannot determine damages on a summary judgment motion? No, that isn't my contention. I wouldn't go that far. It happens all the time, doesn't it? True, true. And I have to concede that in this district, there is no mandatory hearing for- So your unhappiness is with the amount that the court picked, rather than the procedures involved in selecting it? Well, actually, I will certainly address the amount, and that we have adjoined several judgments here in a rather staggering amount. But as well- The total amount of money that the court found was paid, I guess, primarily through Atlas, in the aggregate of the people who were ultimately solicited and paid. Could you restate the question? Okay. What I'm trying to understand is, what amount of money did the court find was received collectively from the people who bought these, what do I call them, sales materials, opportunities? What was that amount? I believe that amount was well over the $20 million amount. But the amount in the record, and it's actually a little bit of a needle in a haystack to find it in a very extensive record. In fact, when I first became counsel on this matter, my first question, as to how did we get to a figure of 17, more than $17 million, and it took me some time to find that in the record. Indeed, there is only one declaration. That's the one from the Atlas official, right, the affidavit? That's true. A former defendant who said, and I believe this will answer your question, perhaps indirectly, that the this declaration was actually supplied at the request of the He claims to be a CPA. He has come up with a summary, a custom summary report, which, in microscript, came up with a net sales figure of the $17,775,369, which indeed is the amount entered by, of the judgment entered by the district courts. And were you prepared at the summary judgment stage, I say you, Mr. Stefanchik, was he prepared to introduce countervailing evidence to show that that CPA's computations were wrong? I'm glad that point was raised now, because indeed, it is an uncontested fact that Barringer Corporation received really only a percentage of any revenue that came into Atlas. That's not my question. My question is, the government made a showing in support of their summary judgment motion through the affidavit of this former accountant saying, I've reviewed the records, and here's how much money we got from all the folks who subscribed to the program. Was Mr. Stefanchik prepared, or did he offer, countervailing declarations of a knowledgeable witness to dispute that the number was the amount that the CPA computed? There were no total calculations in the record. However, the record does contain uncontested, the uncontested facts that the Barringer Corporation received in royalties somewhere between 15 and 22 percent. But no. I'm going to try this one more time. I'm going to ask you the same question in a different way, and I want an answer to it if you can give me one. Was there any evidence proffered to the district court to dispute what the CPA had declared? There is no specific evidence dealing with the actual amount of damages, only that it could be calculated based on the royalties. So Mr. Stefanchik had the opportunity, had he chosen to supply such evidence to the district court to dispute it, but he didn't. And that's what led Judge Martinez to say, I'm granting summary judgment because there isn't any dispute over these facts. Mr. Stefanchik hasn't supplied me with any evidence. That may well have been in the court's mind at the time, but it certainly does not appear evident in the order or in the judgment that the court went through any consideration. But to get back to what Judge Tallman said, at least as I read the record, I see no countervailing affidavit from Mr. Stefanchik indicating how it should be calculated. He criticized, his counsel criticized the methodology that was used by the Atlas official in reaching its determination, but that's quite different than coming up with a countervailing affidavit. And as you well know, as an experienced litigator, all the trial court can look at is the evidence that's put before it. And in effect, what happened here is that one side put in evidence, the other side didn't put in any evidence that the court could rely upon. So I guess I'm left with the question, why would that be wrong? If there's nothing to counteract it, why is it incorrect to use that figure? Well, again, Your Honor, while I was not counsel of record at the trial, I think it does appear to me, given that there's only a very slim, and that's a gracious word, slim evidence to support that figure. And it is Atlas's net profits, really not Beringer's. We are seeking it. Counsel, that's the problem that we're wrestling with here. And it is not uncommon in our experience in cases where deceptive practices have been alleged for a matter to come forward, and the party against whom the proceedings are pending simply doesn't show or doesn't contest the case that the administrative agency has offered to the district court. And our cases have routinely upheld summary judgment in those situations. And what makes this case different from any of these others? I suppose what does make this case different is that it is within the discretion of the court, that the evidence was very slim, that if you look at the figure 17,775,369 appears once. And it's... Does that make any difference? Well, I think it... There's no countervailing evidence, and that's the only figure that's put there. Why is that? Why is that inadequate? I think that appropriate evidence on damages would trigger an appropriate response from the defendant's counsel to say, we need to deal with damages. I think it appears to me, from reviewing the record, that the procedure... That the parties believed, Judge Martinez, that the court was going to be deciding liability, and that if there were... If liability was decided against the defendants, that there would be a hearing on damages. That's an appropriate due process, step-by-step measure. But you've already indicated, I believe, counsel, have you not, that you agree that under our jurisprudence, there's no requirement to hold a hearing. You also agree that you can... Many cases are decided, including damages, on a summary judgment basis. So given those two concessions, which I think are legally correct, what did the district court do wrong on the issue of the damages? Your client did not put in... I know you weren't the counsel, but your client did not put in any countervailing affidavits. Under the regulations, your client was a seller, because your client, and I'm quoting, was among any person who, in connection with a telemarketing transaction, provides offers or arranges for others to provide goods or services to the customer in exchange for consideration. So under that logic, and under that law, the district court had only one figure in front of it, but it was a figure supplied by someone under oath who presumably was knowledgeable and who represented a company that had already stipulated, or shortly thereafter stipulated to a judgment, for $20 million based upon what it thought was the money that had gone through. Well, I guess there are two ways I'd like to answer that. Again, the evidence in the record is very slim on damages, and it is within the court's discretion to make an appropriate ruling. Clearly, the court was ready to find liability, but there was nothing barring the court from going ahead to having a look at the damages and forcing... But there was nothing there because your client didn't supply any evidence to show the court that there was a legitimate dispute over the amount of damage. I'm looking at the summary judgment order on page two, where Judge Martinez recites that the defendants opposed the motion first by moving to strike portions of the exhibits submitted by the plaintiff, FTC, and then making arguments that they can't be held liable for what Atlas did. That's not offering evidence to establish a contested issue of material fact. That's making, first, an argument as to the admissibility of the evidence that the plaintiff is offering, and then arguing a legal theory as to why judgment should not be entered against them. And I think Mr. Sofancic has to do more, doesn't he? Perhaps, Your Honor, but it is incumbent on the court to make sure that the law is upheld. And the standards... But it is the law, counsel. That's what I'm struggling with your argument here, because I don't understand what legal error Judge Martinez committed by entering summary judgment in the face of this procedural record. Because a damages award in this magnitude, without a hearing, without allowing the... Without allowing it, liability decided, fine, but without allowing a defendant in the circumstances to put on the evidence... But wasn't it incumbent on Mr. Sofancic to supply the court, when he responded to the FTC's summary judgment motion, to basically show the court why a hearing was necessary? The evidence is undisputed that the royalties that went to the Beringer Corporation were only a percentage of these figures. That's what I'm concerned about. Isn't that your only complaint here on damages or on justifiable injunction against you, that Beringer and Mr. Sofancic did not have control, that they weren't responsible, even under the Telemarketing Act? Isn't that your only position that will prevail if you are right? I'm afraid I don't understand your question. Would you mind repeating it? Doesn't it all depend on your clients having control of Atlas, enough control to be responsible for the misleading advertising and proposition? That is our contention. That's your only defense, isn't it? Well, again, going to the summary judgment standard, we are... Fact issue, at least a fact issue. A factual issue was raised by the defendant's experts, again, on those merits. And that's a very meaty factual issue to base... I would have thought you had spent all your time on that, but you're now on your rebuttal. I apologize, Your Honor. You are out of time, and we do need to give the government an opportunity to proceed. Thank you. May it please the Court, Leslie Mellman, representing the Federal Trade Commission. This appeal involves a collaboration between John Stefanczyk and his corporation Behringer and his marketing agents. Mr. Stefanczyk was involved from the very beginning in setting up a scheme whereby he would provide the product and his agents would collect the funds from consumers and market it. He directed the marketing program. He was the driving force behind it by providing ideas, including earnings representations that could be used in the mail pieces. He provided his likeness, his signature, his whole life story. This is really a collaboration, and that is why he is fully responsible for the $17 million, which is not disputed. That is the amount that Atlas's accountant, after examination of the record, determined was what was taken in from consumers after you took into account any returns or refunds. Ms. Mellman, why did Atlas agree to a judgment of $20 million if the amount taken in was $17 million and some change? Your Honor, my understanding from trial staff is that at that point in time, there was some lack of clarity as to what the amount that was taken in. It is my understanding that the $20 million, that the refunds had not yet been deducted. Later on, we got better figures, and we have a declaration as has been noted earlier from Atlas's accountant. And so Mr. Stefanczyk then is liable for the $17 million, which excludes the refunds that were provided to some consumers who were most vocal. So the $20 million was, since they weren't going to pay anything, they probably didn't care as much. Is that a fair statement? I would surmise that is the case. Okay. Was there a criminal prosecution that arose out of the FTC investigation? Not that I'm aware of, Your Honor. And the settlement that was reached with Atlas didn't contain any releases or promises that Atlas wouldn't be prosecuted if it entered into the settlement? No. That is actually counter to commission policy to grant such releases. That is never given as a matter of policy. Mr. Stefanczyk had considerable control over the advertising that was used to market the program. Mrs. or Mr.? Mr. Stefanczyk. I'm sorry. I thought you got a new party in here I wasn't aware of, so. I'm sorry, Your Honor. He contributed the, as I noted earlier, the specific numbers that we use in the earnings claims, and he also contributed the idea that consumers' efforts would be supported by coaches who would help them every step of the way. And that was a critical selling point for these consumers. They knew that they would need some help to learn how to work the system in locating privately held mortgages. And in reading the consumer declarations, it's very clear that the availability of the coaches was a critical selling point for the consumers who invested anywhere from $5,000 to $8,000 to buy the full array of services. Mr. Stefanczyk also contributed his life story, which was used repeatedly not only in the mail pieces, but he was also referred to by the telemarketing representatives, he was referred to on a first-name basis in the telemarketing sales calls to consumers. So he was definitely featured in this product, and it was that was a major selling point for consumers, that someone else had been successful in this endeavor. Counsel, I think you've well presented this information in your briefs. Are there any particular legal issues that you want to emphasize? I think we know the factual background that you've indicated. There are really only two legal issues that I would emphasize, Your Honor. One, that the commission made of the luminous submission in support of its motion for possible provided contravailing evidence in the form of declarations to consumers in the form of they have access to their own database, but the commission's submission was essentially met with nothing, and therefore, there has not been a disputed issue of material fact that would warrant sending this back to the district court for a trial. The other legal issue that is important to the commission is that, based on the facts, Mr. Stefanczyk had certainly sufficient control over the marketing component of this overall scheme. It's reflected most markedly in the letter that his own attorney at the Venable Law Firm sent to him acknowledging receipt of the telemarketing scripts and the mail pieces. This was another situation, I gather, where there were no countervailing documents submitted to bring that into issue. It was uncontested. Is that correct? That's correct, Your Honor. Unless the Court has questions, I believe I've covered the remaining issues in my brief. Well, the one question I guess I would have is, given Ms. Levin's concerns over damages, had the Court conducted a hearing in order to quantify the damages, what additional evidence would the commission have introduced beyond what was included in the submission supporting the summary judgment motion? Well, there really is no additional evidence other than Atlas's own records. And there's the declaration of Atlas's accountant that is already before the Court. So the only additional evidence – well, there wouldn't be any additional evidence, I suppose, the commission could have put Atlas's accountant, Mr. Christensen, on as a witness. But that amount was undisputed. What was submitted was, in fact, his compilation of what was in the database, right? It was his compilation of the database, and it was not disputed before the district court. Is there really any questions? No. Thank you very much. Thank you, Your Honor. Ms. Levin, I'll give you a couple minutes in rebuttal since the government has ceded some of its time. Lucky you. By way of rebuttal, I'd really like to just follow up on Judge Heavey's question, which was, let's have you address the question of the expert witnesses. The fact – the statement in the passage from the order in summary judgment, which we contend is legal error, is the following. While the defendants – while defendants argue the survey is flawed based on their own expert witnesses' opinions, that objection goes to admissibility of the survey's results. It does not create a factual dispute. And there is a footnote to the first – to that, but not to the second phrase. Indeed, it does create a factual dispute. It can create a factual dispute. And a close examination of the experts' reports and the defendants' experts' reports really need to be undertaken by the circuit. Is your challenge to the conclusion – was it an American University professor who did the survey? I'm – And he sent out survey questionnaires to some 7,000 former customers, and then he got so many responses. And from those responses, he computed a number that there were only, what, 150 or 160 people who'd ever made any money. Is that right? I think that's a – So Mr. Stefanczyk was prepared to bring in survey experts who would say the methodology employed by the AU professor was faulty, that it wasn't sufficient to survey all 7,000. So we can't have any confidence that only less than 1 percent of the customers ever made any money? Is that basically what we're talking about? Thank you, Your Honor. You've made my argument for me, except that there were indeed two. I just want to make sure I understand what your argument is. Two. That is indeed my argument. Why doesn't that go, as Judge Martinez said, to the weight to be given the professor's survey results as opposed to the admissibility of the evidence he brought? What the order says is that it cannot raise a factual issue on summary judgment. But that isn't a contested issue of a material fact. That's how much weight should the factfinder give to evidence that is otherwise admissible. The question is, is it reliable or not? If the Court adopts those conclusions as factual findings and the FTC requires that in order to be able to prove the elements of its case, then in – Don't you need to come in with something more than I don't like the methodology that the AU professor utilized? Here are my survey results, and my survey results show that more than 80 percent of the 7,000 customers made money. That would create a contested issue of material fact or reliability. I think there's a litigation strategy involved, and one strategy is to be able to Don't get to employ that litigation strategy until you get to trial. And the way you get to trial is to show that there's a contested issue of fact over how many people made money. And what I understand Judge Martinez to be saying here is you didn't establish a contested issue of material fact, that there were only a handful of people who made money. What you want to say is it wasn't really 157. It was 293 or 1,000. And that's where I think Judge Martinez was coming from. I think that the experts' reports found such serious flaws. And I might add that the expert I don't think could be contested by the FTC. He's a former employee of the FTC. He's probably the preeminent expert in designing these types of surveys. And for someone like that to come in and say this survey is flawed, these results cannot stand. You cannot base an $18 million judgment on flawed survey evidence. With all respect, I appreciate you're doing your job, and I know you're working hard at it. But Judge Tallman has, I think, stated the law very clearly that the only issue, what he ended up doing was to attack the methodology. That's not evidence. That simply goes to the credibility of the evidence stated. Had this same expert prepared, if you will, a counteraffidavit, doing his own survey of the people and so on, as Judge Tallman indicated, then we would have countervailing evidence to consider. But the district court had before it, in effect, only one affidavit about the damages. He could determine whether or not the critique supplied by your expert undermined his confidence in the evidence enough to deny summary judgment. But he chose not to do that. He felt it was credible. The question is whether he abused his discretion. But you have not shown how, as a matter of law, he has abused his discretion. We don't really have a whole lot we can do on this, do we? On that standard, on that point, that issue, Your Honor, that's not an abuse of discretion standard with all due respect. That should be reviewed by this circuit de novo. And again, I am for it. Well, let's say we do it de novo. Aren't we back in the same boat if you have no evidence, no contrary evidence? Well, I guess I would argue that that is contrary evidence, that if you look very few words that comprise Rule 56, it says that the court shall consider all the evidence. It doesn't say that it has to be a certain kind of evidence, that lay or fact witnesses should be dealt with differently than expert testimony. It does not say that in the rule. And, indeed, the prevailing law in this circuit says that expert evidence can indeed raise a factual issue. And I take issue with that statement. I take issue with that passage that I read from the order on summary judgment upon which it is based. And, again, this is a very large judgment. It has had a huge impact on the defendants. There are four defendants who have been dismissed without paying a penny, as Your Honor has aptly observed, and two defendants. He would still have, I assume he would still have a claim over against them if he thought they had any money that he could get from them, because he's jointly and severally liable as they were. And if he has to pay the whole amount, notwithstanding their release from the FTC, he can still sue them, can't he? That may or may not be true, Your Honor, but it is outside the scope of what this Court should consider. And whether it is – whether on the equitable restitution basis this figure of close to $18 million really should be imposed on one defendant out of a slew of many who are responsible for all the supposedly disgruntled consumers out there. Thank you very much, Ms. Levin. Thank you, counsel. The case just argued is submitted. And we will now hear argument in No. 08-30050.
judges: Tallman, Smith, Reavley